FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
2/21/2022 1:28 PM
KATHLEEN VIGIL CLERK OF THE COURT
Monica Chavez Crespin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

JIMMIE MAHAN JR.,

      **Plaintiff,**

v.                                        NO. D-101-CV-2022-00291
                                                    Case assigned to Mathew, Francis J.

**REHOBOTH TRUCKING, LLC, AND
FITSUM GEBRETSADIK,**

      **Defendant.**

### PLAINTIFF'S COMPLAINT FOR PERSONAL INJURIES

COMES NOW Plaintiff Jimmie Mahan, Jr. ("Plaintiff"), by and through his attorneys, Zinda Law Group, PLLC, (S. Burgess Williams), and make the following allegations against Defendants:

**I.    PARTIES, JURISDICTION, & VENUE**

1.    Plaintiff is an individual and is now, and at all times mentioned in this Complaint was, residing at 1400 13th St. West, Trailer #16, Columbia Falls, Montana 59912.

2.    Defendant Rehoboth Trucking, LLC. ("Defendant Rehoboth") is a corporation formed under the laws of the State of Texas. Defendant Rehoboth can be served through its registered agent, James Browning, at 20 First Plaza, Suite 725, Albuquerque, New Mexico 87125.

3.    Defendant Fitsum Gebretsadik ("Defendant Gebretsadik") is an individual who, upon information and belief, is a resident of Nevada. Defendant Gebretsadik may be served his residence, 3663 Kolendo Court, Apartment A, Las Vegas, Nevada 89103, or wherever he may be found.

EXHIBIT A

4. Plaintiff's claims arise under the common law and statutory laws of New Mexico. The Court, therefore, has subject matter jurisdiction. *See* Art. VI, § 13, New Mexico Constitution.

5. Venue is proper in Santa Fe County pursuant to NMSA § 38-3-1 because Defendants are not residents of this state.

6. Plaintiff seeks damages in excess of the minimum jurisdictional limits of the Court.

## II.   FACTUAL BACKGROUND

7. On October 27, 2021, Plaintiff was driving southbound on Interstate 25 near mile marker 215 in Albuquerque, New Mexico in a 2020 Peterbilt tractor-trailer combination.

8. At the same time, Defendant Gebretsadik was behind Plaintiff in a 2016 Freightliner tractor-trailer combination, which was owned by and/or operated at the direction of Defendant Rehoboth.

9. Defendant Gebretsadik was in the course and scope of his employment with Defendant Rehoboth at all times relevant herein.

10. Defendant Gebretsadik approached Plaintiff's vehicle from behind in an adjacent lane.

11. Defendant Gebretsadik attempted to pass Plaintiff's vehicle and paid improper attention.

12. Defendant Gebretsadik attempted to merge into Plaintiff's lane in an exit only lane to the right Plaintiff's lane.

13. Defendant Gebretsadik then fled the scene of the crash.

14. At all times relevant herein, Plaintiff was acting with due and reasonable care, and in conformance with all applicable ordinances and statutes.

15. Defendants' negligence and negligence *per se* were proximate causes of the collision.

16. As a direct and proximate cause of the collision, Plaintiff suffered severe harms and losses.

### III.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Negligence of Defendant Gebretsadik)**

17. Plaintiff incorporates herein by reference the allegations described above.

18. At all times relevant herein, Defendant Gebretsadik was operating a commercial motor vehicle transporting property in interstate commerce.

19. In order to undertake such actions, Defendant Gebretsadik is required to have, at a minimum, the knowledge and skills necessary for the safe operation of a commercial motor vehicle.

20. The safe operation of commercial motor vehicles requires specialized knowledge, skill, and additional training:

   a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;
   b. commercial motor vehicles are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;
   c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory; and
   d. commercial motor vehicles pose more of a risk of causing personal injury, death, and property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

21. In order to undertake the safe operation of a commercial motor vehicle, drivers such as Defendant Gebretsadik must have knowledge and skills in many areas, including the following:

    a. the procedures for safe vehicle operation;
    b. the proper procedures for performing basic maneuvers such as applying brakes and stopping;
    c. the principles and procedures for maintaining a safe distance from other cars;
    d. the principles and procedures for safely changing lanes;
    e. the principles and procedures for safely maneuvering in traffic;
    f. the principles and procedures for being aware of the surroundings at all times; and
    g. the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow.

22. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the well-known danger of unsafe lane changes.

23. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that collisions can occur when a driver makes an unsafe lane change.

24. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the foreseeable dangers of distracted driving.

25. Defendant Gebretsadik also breached the above-referenced duties without limitation in the following ways:

    a. Driving distracted;
    b. Refusing to maintain his lane-of-travel;
    c. Keeping an improper lookout;
    d. Traveling at an unreasonable speed given the circumstances;
    e. Making an untimely and improper application of his brakes;
    f. Exhibiting inadequate driver attention;

    g.  Taking improper evasive actions to avoid the collision; and
    h.  Choosing to violate safety rules.

26. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff suffered personal injuries and resulting damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Negligence *Per Se* of Defendant Gebretsadik)

27. Plaintiff incorporates herein by reference the allegations described above.

28. Defendant Gebretsadik's conduct as outlined above constitutes negligence *per se* because he violated the following New Mexico statutes:

    a.  66-7-301(b)(1) NMSA (1978)—requiring that in every event speed should be so controlled by the driver as may be necessary to avoid colliding with any person;
    b.  66-7-301(b)(2) NMSA (1978)—in every event speed shall be so controlled by the driver as may be necessary to comply with legal requirements as may be established by the State Highway and Transportation Department or the New Mexico State Police Division of the Department of Public Safety and the duty of all persons to use due care; and
    c.  66-8-114 NMSA (1978)—careless driving.

29. Defendant Gebretsadik violated the above-referenced statutes in the moments leading up to and at the time of the collision described herein.

30. Plaintiff, as a driver on the roadway, is a member of the class of persons the above-referenced statutes were designed to protect.

31. Defendant Gebretsadik has no excuse for the violation of the above-referenced statutes.

32. Defendant Gebretsadik's violation of the above-referenced statutes proximately caused Plaintiff's injuries.

33. Accordingly, Defendant Gebretsadik is negligent *per se*.

PLAINTIFF'S COMPLAINT FOR PERSONAL INJURIES
*Jimmie Mahan Jr. v. Rehoboth Trucking, LLC, et al.*
Page 5 of 10

## THIRD CLAIM FOR RELIEF
(*Respondeat Superior*)

34. Plaintiff incorporates herein by reference the allegations described above.

35. Without waiving the foregoing, in conjunction with, additionally and/or alternatively, Plaintiff would further show this Court that Defendant Gebretsadik was in the course and scope of his employment with Defendant Rehoboth at the time of this collision.

36. Under the doctrine of *Respondeat Superior*, Defendant Rehoboth is responsible for Plaintiff's damages Defendant Gebretsadik's negligence caused as alleged above.

## FOURTH CLAIM FOR RELIEF
(Negligence of Defendant Rehoboth)

37. Plaintiff incorporates herein by reference the allegations described above.

35. Defendant Rehoboth operates as a commercial motor carrier.

36. In return for the privilege to operate commercial motor vehicles on public roadways, prospective motor carriers must make certain safety-related certifications and verifications.

37. Motor carriers such as Defendant Rehoboth are required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain a United States Department of Transportation ("US DOT") number.

38. Each Form MCS-150 Defendant Rehoboth submitted or will submit contains a Certification Statement whereby Defendant Rehoboth declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations.

39. Motor carriers such as Defendant Rehoboth are required to submit a Form OP-l to

PLAINTIFF'S COMPLAINT FOR PERSONAL INJURIES
*Jimmie Mahan Jr. v. Rehoboth Trucking, LLC, et al.*
Page 6 of 10

the Federal Motor Carrier Administration in order to gain interstate operating authority.

40. The Form OP-l Defendant Rehoboth submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that Defendant Rehoboth is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3; Subchapter B (Parts 350-399).

41. The Form OP-l Defendant Rehoboth submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that it has access to, and is familiar with, all applicable US DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

42. Each Form OP-l Defendant Rehoboth submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, it:

   a. has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;
   b. can produce a copy of the FMCSR;
   c. has in place a driver safety training/orientation program;
   d. is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and
   e. has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

43. Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations.

44. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

45. Reasonably safe motor carriers utilize information and training materials from

industry associations and third-party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

46. The safe operation of commercial motor vehicles includes practices and procedures related to stopping vehicles, seeing ahead, space management, collision countermeasures, and distracted driving.

47. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

48. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

49. Defendant Rehoboth's careless, negligent, and unlawful acts directly and proximately caused Plaintiff's harms and losses in the following ways:

    a.    by refusing to design, develop, and implement adequate safety management controls related to stopping vehicles, seeing ahead, space management, collision countermeasures, lane changes, and/or distracted driving;

    b.    by refusing to train Defendant Gebretsadik on the well-known dangers of maintaining an unsafe distance from other vehicles, keeping an improper lookout, exhibiting inadequate driver attention, driving while distracted, taking improper evasive actions to avoid collisions, making unsafe lane changes, and refusing to follow the proper procedures for safe commercial vehicle operations.

    c.    by refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Gebretsadik;

    d.    by refusing to instruct its drivers, employees, and/or agents, specifically Defendant Gebretsadik;

      e.    by refusing to comply with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

      f.    by improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically Defendant Gebretsadik;

      g.    by refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Gebretsadik for compliance with company polices and/or state and federal regulations;

      h.    by allowing Defendant Gebretsadik to operate a commercial motor vehicle despite having knowledge of his inability to do so safely;

      i.    by refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard;

      j.    by refusing to utilize available technology to monitor and audit the safety performance of its drivers, including Defendant Gebretsadik;

      k.    by negligently hiring, training, supervising, and retaining Defendant Gebretsadik.

50. Defendant Rehoboth owed Plaintiff a duty to properly develop, monitor, and enforce proper policies and procedures for the protection of individuals on the roadway.

51. Defendant Rehoboth breached the above referenced duty when it refused to properly develop, monitor, and enforce policies and procedures for the protection of individuals on the roadway.

52. Defendant Rehoboth's actions were a proximate cause of the collision between Plaintiff's vehicle and the vehicle that Defendant Gebretsadik was driving.

53. Defendant Rehoboth's careless, negligent, and unlawful acts were the direct and proximate cause of the collision and Plaintiff's resulting harms and losses.

## IV.    DAMAGES

54. Plaintiff incorporates herein by reference the allegations described above.

55. As a result of the acts and/or omissions of these Defendants, Plaintiff suffered injuries and damages. Plaintiff is entitled to damages, both past and future, including, but not

limited to, medical costs, lost wages, loss of earning capacity, pain and suffering, mental anguish, physical impairment, and any other damages that will be proved at trial.

56. As a direct and proximate result of Defendants' negligence, as set forth above, these Plaintiff suffered injuries and damages in amounts to be proved at trial.

## V. PRAYER & REQUFEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

    a. for special and actual damages in an amount to be proved at trial and as allowed by law;

    b. for pre-judgment and post-judgment interest as allowed by law;

    c. for costs of court; and

    d. for such other and further relief to which the Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ S. Burgess Williams*
S. Burgess Williams
**ZINDA LAW GROUP**
8843 North Capital of Texas Highway
Suite 304
Austin, Texas 78759
(512) 246-2224 Office
(512) 580-4252 FAX
burgess@zdfirm.com
**Service of Documents: service@hzfirm.com**

*Attorneys for Plaintiff*